### HARRIS v. BAYSHORE COURT, Inc.

Circuit Court, Dade County, Civil Appeal.
May 29, 1951.

Sibley & Davis, Miami Beach, Thomas H. Barkdull, Jr., Miami Beach, of counsel, for appellant.

Durand A. Holladay, Miami, for appellee.

VINCENT C. GIBLIN, Circuit Judge.

The lower court's jurisdiction of the appellant was challenged by motion. The denial of the motion is assigned as error.

It is my opinion that the question whether there was error in the denial of the motion was rendered moot by the appellant's subsequently pleading and going to trial on the merits.

In Henry v. Spitler (Fla.), 64 So. 745, it was held that "a defendant, in an action at law, who has appeared specially for the purpose of contesting the validity of the service of the summons upon him, and such matter has been determined adversely to him, in order to preserve his status as not having been properly served with the summons, so as to give the court jurisdiction over his person, must refrain from taking any subsequent steps to defend the action upon the merits;" and that "in the event he proceeds to a trial upon the merits, he cannot thereafter in an appellate court be permitted to raise such question of jurisdiction, but will be held to have entered a general appearance."

The reason for the conclusion reached in Henry v. Spitler, supra, is aptly stated in Corbett v. Physicians' Casualty Ass'n. (Wis.), 115 N. W. 365: "We think it is also a waiver of such a defect for the party, after making his objection, to plead and go to trial on the merits. To allow him to do this, would be to give him this advantage. After objecting that he was not

properly in court, he could go in, take his chance of a trial on the merits, and if it resulted in his favor, insist upon the judgment as good for his benefit, but if it resulted against him, he could set it all aside upon the ground that he had never been properly got into court at all. If a party wishes to insist upon the objection that he is not in court, he must keep out for all purposes, except to make that objection."

There has not been brought to my attention any later case in which our Supreme Court changed the position it assumed in Henry v. Spitler, supra (decided in 1914), nor have I been shown that the rule enunciated in the case has been changed by later statute or rule. Our new common law rule 13 indicates an intention to adhere to the old rule.

My conclusion, therefore, is that the appellant's first, second and third assignments of error (all of which are based on the denial of the mentioned motion) are without merit.

By its fourth assignment of error the appellant raises the question of whether the giving by a contractor (to the property owner) of the sworn statement required by section 84.04(3), F.S.A., is a condition precedent to the acquisition of a lien on the owner's real property for labor or services performed or materials furnished.

Concededly, the required statement had not been given by the appellee at the time of the institution of the action; and for that reason the court below sustained the appellant's motion to dismiss the complaint, but granted to the appellee leave to amend. Before the filing of the amended complaint the statement was furnished.

It is the appellant's contention that no lien existed at the time of the commencement of the action and that, therefore, the complaint could not be amended to assert a cause of action based on an after-acquired lien.

The pertinent language of section 84.04(3) seems to support the contention. It is provided that "the contractor *shall have no lien or right of action* against the owner for labor or services performed or materials furnished under his contract while in default by reason of not giving the owner such statement under oath."

The opinion of the Supreme Court in Hardee v. Richardson (Fla.), 47 So. 2d 520, however, impels me to overrule the contention. The court said:

"As has been heretofore quoted, Section 84.04(3), F.S.A. provides in its last sentence that a contractor 'shall have no lien or right of action against the owner for labor or services performed or materials furnished under his contract while in default by reason of not giving the owner such statement under oath.' Viewed in isolation, this sentence might seem to suggest that the giving of the sworn statement by a contractor in privity with the owner is an indispensable condition precedent to the acquisition of a lien against the property of the owner for work done or material furnished by the contractor under his contract, as well as a condition precedent to the right of the contractor to enforce the lien against the property once the lien has been perfected. But when the section is considered in connection with other pertinent provisions of the chapter pertaining to mechanics' liens, it can be readily seen that such cannot be the case . . .

"When the pertinent provisions of the uniform mechanics' lien law are thus viewed together the language used makes it clear that the legislature intended that the general contractor should have his lien by performing the work and furnishing the materials in accordance with his contract. It intended that if the general contractor desired to protect the priority of his lien as against a 'conveyance, mortgage, building loan contract, attachment, judgment, or other encumbrance or demand against such real property which was not recorded, docketed or filed at the time of the visible commencement of operation,' he might do so by filing his claim of lien with the clerk of the circuit court of the county wherein the property is located within 'three months after the final performance of the labor or services or the final furnishing of the materials by the lienor, dating from the last item of labor or service performed or of materials furnished by him.'

"It intended, further, that the sworn statement to be given pursuant to section 84.04(3) should not be necessary to the acquisition of the lien but should operate to protect the owner against the possibility of paying more than once for the same item of labor or materials; the effect of the section being to afford to the owner the right, without being deemed in default, to withhold payments due on the general contract until proof has been given that subcontractors, materialmen and 'laborers have in fact been paid, or that specified amounts are due and owing such preferential lienors which the owner may lawfully pay out of the money due the general contractor."

The fifth and last assignment of error is based on the contention that certain of the labor and services performed by the appellee were performed more than a year prior to the institution of the action and no notice of lien had been recorded.

The governing statute requires (where there has been no record of a notice of lien) that a suit to enforce a lien be brought within twelve months from the performance of the work or the furnishing of the materials; but the twelve-month period begins to run from the time the last work was done or the last materials were furnished where there is a continuous and connected transaction or running account.

Inasmuch as the evidence adduced at the trial is not in the record, I cannot determine whether there was or was not a continuous and connected transaction or running account. Presumably, however, there was. It cannot be presumed that the court below entered the judgment appealed from in the absence of such evidence. For the reason stated, I cannot sustain the fifth assignment.

The judgment appealed from is affirmed.